IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARA MARIE HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 24-889 |
| v. ) | |
| ) | |
| LELAND DUDEK ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant, ) | |

MEMORANDUM OPINION

I.  **INTRODUCTION**

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Kara Marie Hall ("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff contends the Administrative Law Judge (the "ALJ") improperly failed to account for the "total limiting effects" of plaintiff's impairments by a) not accounting for all impacts and impairments of her mental health condition in calculating plaintiff's residual functional capacity ("RFC"); b) failing to sufficiently explain which medical opinions were deemed persuasive, and, more importantly, failing to explain the rationale for finding the opinion of plaintiff's treating mental health physician was not persuasive; and c) failing to consider plaintiff's self-described limitations of her impairments when evaluating "total limiting effects."

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and should be reversed.   It is plaintiff's contention that the case should be remanded for the ALJ to consider properly all the evidence of record, including plaintiff's self-described conditions and

the recommendation made by her primary mental health provider to account for the "total limiting effects" of plaintiff's impairments in calculating plaintiff's RFC.  The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  The court, for the reasons set forth below, will deny plaintiff's and defendant's motions for summary judgment (ECF Nos. 7, 10) and will remand this case for proceedings consistent with this opinion.

## II. PROCEDURAL HISTORY

Plaintiff filed a previous application for benefits in December 2017 which was denied by an administrative law judge on May 7, 2019, with no appeals filed. (R. at 22.)

On July 7, 2020, plaintiff protectively filed the current Title XVI application for SSI, and noted her disability began on January 1, 2010. (Id.)  The claim was initially denied on October 9, 2020, and again upon reconsideration, on March 12, 2021. (Id.)  On April 15, 2021, plaintiff requested a hearing, which was conducted by telephone before the ALJ on August 19, 2021. (Id.) Plaintiff agreed to appear by telephone and testified at the hearing. (Id.)  Plaintiff was represented by an attorney at the hearing. (Id.)  An impartial vocational expert also testified at the hearing. (Id.)

In a decision dated December 13, 2021, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and although plaintiff had no past relevant work, there were sufficient jobs that exist in the national economy that she could

perform. (R. at 35.)   Plaintiff timely requested a review of that determination and by letter dated January 17, 2022, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-4.)   Plaintiff subsequently commenced action seeking judicial review.

In an unopposed motion to the court, the Commissioner determined "further evaluation of Plaintiff's claims is warranted" and requested to vacate the proceedings to direct the ALJ "to fully develop the administrative record, [and] offer plaintiff the opportunity for a new hearing, and to submit additional evidence in support of her claim." (Civ. No. 22-1674, ECF No. 14.) The motion for remand was granted and a final judgment was ordered by the court on March 31, 2023. (Civ. No. 22-1674, ECF No. 16.)

The ALJ commenced a second hearing on November 20, 2023, by telephone, where, again, plaintiff agreed to appear and testify, accompanied by her attorney. (R. at 1583.)   An impartial vocational expert ("VE"), who was not the same vocational expert that testified at the previous hearing, also appeared and testified. (Id.)   The ALJ's introductory remarks at the hearing indicated the focus of the hearing would be on his RFC analysis "related to the GED levels and the language used in the RFC with regard to SVP 1 to 2 with one- to two-step instructions, and an apparent conflict, whether that's associated with a GED reasoning level of 1 or 2." (R. at 1611.)   An additional issue with respect to a limitation the plaintiff has for only occasional overhead reaching, which was not taken into account at the last hearing, was also scheduled to be addressed. (Id.)

At the November 20, 2023, hearing, the ALJ reviewed the exhibits and documents in the record with plaintiff's attorney. (R. at 1614.)   Plaintiff's attorney acknowledged and concurred

3

with the exhibits in the record, as currently submitted, and requested a ten-day extension to provide the ALJ with additional documentation, either in the form of a Medical Source Form or letter, from the plaintiff's psychiatrist, Dr. Lutka, and other records. (Id.)   The ALJ granted this request. (Id.)   Plaintiff's attorney engaged the ALJ regarding the purpose for the hearing, stating that he did not "know how the Appeals Council came up with what it wanted [the ALJ] to focus on…. but [that plaintiff] wants[s] to make sure the whole claim is [ ] reviewed again by [the ALJ] and not just those limited couple of issues." (R. at 1615.)   The ALJ acknowledged plaintiff's attorney's concern, and stated, "I do focus specifically on what the Appeals Council dictates in their Order, but as you suggest, and I typically do, review the Decision in its entirety." (R. at 1616.)   Plaintiff's attorney questioned plaintiff during the hearing about her physical and mental health conditions, with specific focus on changes since the previous hearing. (R. at 1617-1628.)   After the hearing, plaintiff's attorney submitted additional evidence and verified by letter on December 13, 2023, to the ALJ that all additional evidence had been submitted. (R. at 1829.)

In a decision dated April 12, 2024, the ALJ determined that plaintiff met her burden for steps one through four of the sequential analysis.   The ALJ, at step five, found that based on plaintiff's age, education, no past relevant work experience, and RFC, she was capable of performing jobs that exist in significant numbers in the national economy. (R. at. 1598.)   Plaintiff was found to be "not disabled" within the meaning of the SSA under §§ 216(i) and 223(d) and denied SSI. (R. at 1599.)   Plaintiff, having exhausted administrative remedies through the Social Security Administration, subsequently commenced this action seeking judicial review.

### III.    LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).  The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.  "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).  The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).  The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-7 (1947).  "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).  "As a part of this review, 'a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (citing Willbanks v. Sec'y of Health & Hum.

5

Servs., 847 F.2d 301, 303 (6th Cir.1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

### IV.     PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

####    A.     Plaintiff

Plaintiff was born on May 27, 1979, and was 41 years old at the time her application was filed in 2020. (R. at 33, 1598.)   She graduated from high school and had three years of college education. (R. at 51.)   Plaintiff is divorced, lives with her two children, and is able to drive a car. (Id.)   Plaintiff has not had a full-time job in about 18 years or a part-time job in about three to four years. (R. at 49.)   Since that time, she alleges, because of depression, anxiety, and "just being overwhelmed," plus her responsibilities caring for her disabled son, she has been unable to work. (Id.)   Plaintiff listed physical and mental conditions in her SSI application disability report. (R. at 296-307.)   Plaintiff's current medication list includes: pantoprazole, dicyclomine, lamotrigine, trazodone, pregabalin, Effexor, clonazepam, meloxicam, Flexeril, vitamin D3, albuterol inhaler, Advair, diclofenac sodium, Wegovy, dental 5000+, ibuprofen 800, amantadine, montelukast, valacyclovir, vitamin B-12, and Tylenol 500. (R. at 1827-1828.)

Since plaintiff initiated the instant claim for SSI, she self-reports her depression and anxiety have gotten worse, contributed to by the loss of her mother and sister. (R. at 49, 1624.) She reports seeing her psychiatrist "typically [ ] every four weeks," with mental health therapy every week and a crisis plan in place. (R. at 1623.)   Plaintiff's appeal of denial of SSI focuses solely on the "total limiting effects" of plaintiff's impairments, specifically, the impact of her mental health conditions on her RFC determination. (Pl.'s Br. ECF No. 8.)   Accordingly,

6

plaintiff's physical impairments will not be focused on in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived.").

### B.     Mental Health Medical Record

#### 1.     Psychiatrist Dr. Lutka

Plaintiff has a history of mental health issues. She has regularly been seen by psychiatrist Theresa Lutka, M.D. ("Dr. Lutka") for mental health medication management since approximately 2016. (R. at 758.) When plaintiff was hospitalized in August 2020 for a fibromyalgia flare, the doctor on duty consulted with Dr. Lutka. (Id.) From the time plaintiff filed for SSI, through at least the August 2021 hearing, plaintiff was seeing Dr. Lutka every two weeks. (R. at 48, 758.) At the November 2023 hearing, plaintiff testified that she was seeing Dr. Lutka "typically [ ] every four weeks." (R. at 1623.)

Dr. Lutka prepared a medical statement of ability to do work-related activities for plaintiff, dated July 22, 2021, which was prior to the first administrative hearing on August 19, 2021. (R. at 1443-1445.) In that medical statement, Dr. Lutka found plaintiff's abilities "to understand, remember and carry-out instructions were affected by [her] impairments," with both "moderate" and "extreme" factors, and augmented the check-box form with written commentary to provide amplifying information on this set of factors. (R. at 1443.) For the question asking about plaintiff's "ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting," Dr. Lutka checked that plaintiff would be affected by her impairments, checked all factors as "marked" and wrote amplifying information. (R. at 1444.)

Dr. Lutka prepared a second medical statement with respect to plaintiff's ability to do work-related activities, dated November 23, 2023, which was submitted to and accepted by the ALJ after the second hearing. (R. at 2392-2394.) This assessment noted one of the factors in the first question:[1] the ability to make judgments on simple work-related decisions was "marked;" which was a change from "moderate" noted in the 2021 report. (R. at 2392.) In the second statement, Dr. Lutka found plaintiff had deteriorated to "extreme" for all four sub-factors of the second question[2] due to plaintiff's mental health impairments. (R. at 2393.) For support, Dr. Lutka referred to Dr. Groves' cognitive evaluation discussed below. (R. at 2392.)

In addition to Dr. Lutka's two medical statements of ability to do work-related activities, the administrative record was supplemented after the first opinion of the ALJ with nearly 200 additional pages of Dr. Lutka's treatment notes from appointment sessions with plaintiff from September 2021 through September 2023. (R. at 1096-1126, 1380-1442, 1847-1923, 2002-2116.) Each supplemental progress note documented that Dr. Lutka had reviewed the information from plaintiff's therapy sessions with plaintiff's therapists, Steph Ponczek or Ariel Davis-Robinson, that occurred between appointments with Dr. Lutka. (Id.) Her records are replete with lengthy explanatory dialogue, not just check-box forms, that give a full picture of plaintiff's condition and the episodic nature of a mental health condition. (Id.)

    **2.**    **Lindsey A. Groves, Psychologist**

---

1. The first question on the medical statement asked: "Is ability to understand, remember, and carry-out instructions affected by the impairment?" (R. at 1443).
2. The second question on the medical statement asked: "Is ability to interact with supervision, co-workers, and the public, as well as respond to changes in the routine affected by impairments?" (R. at 1444).

Following the order to remand for a second hearing to develop the record. (Civ. No. 22-1674, ECF No. 16), plaintiff was referred to The Groves Psychological Center for a full cognitive evaluation to determine her current level of functioning. (R. at 1834-1843.)  On May 3, 2023, and June 30, 2023, Dr. Lindsey Groves, Psy.D., administered plaintiff a series of widely regarded statistically objective psychological testing protocols. (Id.)  Plaintiff scored average in the areas of general intelligence, working memory, processing speed, and verbal skills. (R. at 1837.)  Plaintiff was administered the Wide-Range Assessment of Memory and Learning, which showed average scores for immediate and general delayed memory, but a very low score classification for the attention and concentration category, indicating severe impairment to the ability to attend. (R. at 1839.)  On the Attention Assessment (IVA-2), plaintiff was assessed on intermixed auditory and visual stimuli and required to switch between sensory modalities.  She was determined to perform as moderately impaired for auditory attention quotient, but extremely impaired for all other tested areas, which included full scale attention quotient, visual attention quotient, full scale response control quotient,[3] auditory and visual focus,[4] auditory and visual

---

3. "The Full-Scale Response Control Quotient (FRCP) is a global measure of the overall ability of the examinee to regulate responses and respond accordingly. This includes the ability to inhibit responses to non-target stimuli, the consistency of reaction times, and the ability to maintain mental process speed throughout the test. Ms. Hall received a FRCP score of 47. This score fell in the Extremely Impaired range. She received an Auditory Response Quotient score of 57 (Extremely Impaired range) and a Visual Response Quotient of 52 (Extremely Impaired range)." (R. at 1841).

4. "Focus reflects the total variability of mental processing speed for all correct responses. This scale assesses an individual's ability to reliably sustain attention without "drifting off" or "tuning out." Low scores on this scale indicate an individual's attentional functioning was unreliable, erratic, and undependable. The client received an Auditory Focus Score of 66 (Severely Impaired range) and a Visual Focus score of 58 (Extremely Impaired range). Speed reflects the average reaction time for all correct responses. It is used to identify attention processing problems related to slow discriminatory mental processing. Ms. Hall received an Auditory Speed Score of 67 (Severely Impaired range) and a Visual Speed score of 40 (Extremely Impaired range)." (R. at

consistency,[5] and sustained visual attention quotient. (R. at 1840-1841.)   Her consistency for auditory and visual control was in the extremely impaired range.   Her score in the sustained auditory attention quotient area, which is the ability to reliably sustain focus without "drifting off or tuning out," was noted as severely impaired. (R. at 1841.)   From the Diagnostic and Statistical Manual of Mental Health, plaintiff was assessed to carry the following diagnoses: post-traumatic stress disorder (F43.10), major depressive disorder, moderate (F33.1), generalized anxiety disorder with panic attacks (F41.1), and mild neurocognitive disorder due to traumatic brain injury (G31.84). (R. at 1842.)

### 3. State Agency Medical Consultants

Plaintiff's medical record file submitted prior to the first hearing before the ALJ in December 2021 was reviewed by state agency medical consultants for independent disability determination analysis and residual functional capability ("RFC") to work. (R. at 99-137.) Psychologist Valorie Lynn Rings, Psy.D., provided a mental health review of the file on September 16, 2020, (R. at 107), and Paul C. Fox, M.D., on October 9, 2020, noted findings about plaintiff's medical conditions. (R. at 110.)   On re-review, Sharon Becker Tarter, Ph.D., on March 2, 2021, assessed plaintiff's mental health record, (R. at 125), and Margel C. Guie, D.O., reviewed other medical conditions on March 12, 2021. (R. at 130.)

---

1841).
5. "Consistency measures the ability of an individual to respond reliably based on reaction time. Consistency is considered to be indicative of an individual's ability to sustain attention in order to produce responses that reflect stable, reliable, and integrated brain functioning. The client received an Auditory Consistency score of 50 (Extremely Impaired range) and a Visual Consistency score of 50 (Extremely Impaired range)." (R. at 1841).

In each review, the medical review noted the activities of daily living that plaintiff was capable of continuing, with mild limitations and adaptation, and because of the plaintiff's age, education, and RFC, each medical source recommended a finding of "not disabled" because plaintiff can perform other work. (R. at 112, 134.)

## V.   DISCUSSION

### A.   ALJ's Findings

Proceeding through the sequential evaluation process, the ALJ determined at step one that plaintiff had not engaged in substantial activity since her claimed disability date, (R. at 1586); at step two acknowledged plaintiff had severe impairments of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), degenerative disc disease of the lumbar spine, trochanteric bursitis and mild degenerative joint disease of the hips, fibromyalgia, asthma, and obesity, (Id.); and at step three found that the plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.).   Plaintiff exhibited multiple moderate limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of her conditions did not satisfy the "paragraph C" criteria. (R. at 1589.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.   During the hearing, the ALJ heard testimony from plaintiff regarding her physical and mental limitations. (R. at 1617-1628.)   The ALJ considered plaintiff's medical record, to include the medical opinions and state administrative medical reviews, and found plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] can never climb ladders, ropes,

11

and scaffolds; [s]he can occasionally climb ramps and stairs. The [plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. The [plaintiff] should avoid concentrated exposure to extremes of loud noise, such as heavy traffic or sirens, light, such as direct sunlight, heat, cold, vibration, wetness, humidity, environmental irritants, such as fumes, odors, dusts, gases, and poor ventilation, as well as hazards, such as inherently dangerous moving machinery and unprotected heights. The [plaintiff] can reach overhead occasionally bilaterally. The [plaintiff] can frequently finger, handle, and feel bilaterally. *The [plaintiff] can understand, remember, and carry out detailed, but uninvolved written or oral instructions.*[6] The [plaintiff]'s work duties and any changes must be explained, written and/or demonstrated and could be learned in 30 days or less. The work must not have strict production rates, such as assembly line work or hourly time quotas. The [plaintiff] can tolerate occasional interaction with others.

(R. at.1589.)   At step four, the ALJ determined that plaintiff had no appreciable prior work. (R. at 1598.)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was work plaintiff was capable of performing given her physical and mental limitations.   Utilizing plaintiff's data as a younger individual, with a high school degree, no vocational history, and based on her earlier testimony at the hearing, the VE testified that there were a significant number of jobs available in the national economy at the light level that a hypothetical individual with an RFC like plaintiff would be capable of performing. (R. at 1633.)   The ALJ inquired whether she was employable if this hypothetical individual were limited to lie down occasionally throughout the workday.   The VE responded that limitation would "eliminate those and any other jobs." (Id.)   The ALJ concluded

---

6. The italicized sentence is the only portion of the RFC that changed following the second hearing. The previous version stated: "Limited to unskilled, low stress work, such as work at the SVP 1-2 level with one to two step instructions." (R. at 28).

at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform…." (R. at 1598.)

**B.    Alleged Errors**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, she argues, among the issues identified previously, that the ALJ improperly failed to account for the "total limiting effects" of her impairments when the ALJ did not sufficiently explain why he rejected the opinion of plaintiff's longtime mental health provider, Dr. Lutka.   If Dr. Lutka's opinion had been considered, plaintiff asserts the RFC determined by the ALJ was deficient because her self-described mental health limitations would be consistent with that opinion and would impact the determination of her RFC. (Pl.'s Br. ECF No. 8 at 2-4.)

**1.    Failure to Sufficiently Explain Why the November 23, 2023 Opinion of Dr. Lutka was Not Accepted in Light of New Treatment Notes and the Submission of a Cognitive Evaluation**

For claims filed after March 27, 2017, like the claim in this case, the policy about how to evaluate medical evidence was altered.[7]

> The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations; supportability and consistency are the most important factors and their application must be explained; other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's: "treatment relationship" with the claimant including length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; and "other factors" such as whether the source has familiarity with other evidence in the

---

7.  The prior policy gave treating physicians' opinions controlling weight (the "treating physician rule") where their positions were supported by medical evidence and were not otherwise inconsistent with other substantial evidence in the record. See Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

13

> claim or understanding of the SSA disability program's policies and evidentiary requirements.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 172 (2025 ed., Thomson Reuters, 2025) (quoting 20 C.F.R §§ 404.1520c(b), (c); 416.920c(b), (c), (2017)).

In applying the altered policy, a district court commented:

> [I]n March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis…. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." **The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability**," [and a]n ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.

Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982, *7-8 (M.D. Pa. Mar. 29, 2021) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).

The treating provider, Dr. Lutka, personally saw plaintiff, on average every four weeks, and consulted with and reviewed plaintiff's psychologist's case notes by those and other counselors for the intervening weeks relevant to plaintiff's care. (R. at 1096-1126, 1380-1442, 1847-1923, 2002-2116.)   Plaintiff's attorney noted in a letter to the ALJ prior to the November 30, 2023, hearing that nearly every one of Dr. Lutka's treatment notes since the first hearing included the "identical or virtually identical comment[:]"

14

> pt. still unable to work due to severity of sxs. MD supports
> SSDI application given duration and severity of symptoms.
> Kara is unable to work due to severity of medical and psychiatric
> symptoms and SSDI was denied despite this MD support of such.
> Sxs are impacting ADL and she is unable to be employed.

(R. at 1826.) The treatment notes had other amplifying information on plaintiff's condition as was applicable from appointment to appointment. (R. at 1096-1126, 1380-1442, 1847-1923, 2002-2116.) The ALJ quoted some language from the session treatment notes, however, to find the medical statements of ability to do work-related activities not persuasive. (R. at 1595-1597.) The Third Circuit Court of Appeals "has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work." Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 356 (3d Cir. 2008). In a similar fact-pattern to the instant case,

> the ALJ notes that [the treating physician] "stated that [plaintiff] has no ability to maintain attention or concentration[, but] [s]he reported in the text of the evaluation that [she] has good focus, good attention, and good concentration." These assessments are not necessarily contradictory, however, as one assessment was describing [plaintiff's] condition at the time of [the treating physician's] examination and the other reflected [the treating physician's] assessment of [plaintiff's] ability to function in a work setting.

Id.; see Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000).

The ALJ supported his rejection of Dr. Lutka's opinion on many such comments from the treatment notes, in addition to concentration, such as "linear and directed thought process, and fair attention … a cooperative behavior, normal speech, fair eye contact, no evidence of delusions or obsessions, fair or good insight, and normal judgment." (R. at 32, 1595.) Like in Brownawell, the ALJ in this case

15

> ignores the possibility that [the treating physician] was not inconsistent in finding [plaintiff] has a good ability to concentrate for the purpose of a medical examination but no ability to concentrate for steady employment.

Brownawell, 554 F.3d at 357. The ALJ relied on one reference to Dr. Lutka's notes submitted after the first hearing, Exhibit B38F at 5, (Dr. Lutka's progress notes from a session date of 9/19/2023),[8] to support the ALJ's finding that Dr. Lutka's opinion was not persuasive. (R. at 2006.) The ALJ commented that the record "described appropriate or euthymic mood and effect;" however, there is no such language on the page cited. (Id.) To the contrary, Dr. Lutka noted plaintiff's mood was "stressed" and her affect was "anxious," (R. at 2004) and found her diagnosis, among other things, to be "moderate major depressive disorder, recurrent episode" and her severity to be with "anxious distress (moderate-severe)." (R. at 2006.) See Brownawell, 554 F.3d at 357; Nicholas D. v. Comm'r of Soc. Sec., No. 23-CV-03139-ESK, 2024 WL 3771825, *6 (D.N.J. Aug. 13, 2024). The ALJ gave little weight to Dr. Lutka's opinion, "finding it 'unsupported by the contemporaneous treatment notes,'" but the ALJ mischaracterized some of the evidence. See B.I.V.R. v. O'Malley, No. CV 22-5143, 2024 WL 3951055, *10 (E.D. Pa. Aug. 27, 2024).

The ALJ, at the time of the second decision, had before him a second medical source statement from plaintiff's treating physician, Dr. Lutka, which indicated an increased level of impairment in plaintiff from her previous report, (compare R. at 1444 with 2393), and referenced

---

8. In the session progress notes, Dr. Lutka noted: "Cognitive evaluation 5/3/23 reviewed (uploaded)- WAIS-IV full scale IQ 90, WRAML 3 scores for memory fell in average range, attention/concentration in 7% at "very low". Impairment demonstrated on IVA-2 which assessed ADHD type sxs. Dx PTSD, MDD and remaining dx were not clear on the document. Pt will bring in another copy. Recommendations included cognitive training and continuing in MH tx." R. at 2002-2003).

a new medical source report from Dr. Groves. (R. at 1834-1843.)   Dr. Groves used quantifiable diagnostic tests to form her opinion of plaintiff's mental health condition, and noted several aspects of "severely" or "extremely" impaired, which appears to support Dr. Lutka's opinion. See B.I.V.R., No. CV 22-5143 at *10.

The ALJ did not have the medical source reports and lengthy treatment records submitted after the first hearing reviewed by the state mental health consultants.   The ALJ evaluated the new medical source reports and treatment records by himself.   While not mandatory, "[t]he United States Court of Appeals for the Third Circuit has cautioned:

> [T]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability. This Court has said before that an ALJ's personal observations of the claimant "carry little weight in cases ... involving medically substantiated psychiatric disability."

Niewierski v. Astrue, 737 F. Supp. 2d 459, 470 (W.D. Pa. 2010) (quoting Morales, 225 F.3d at 319 (quoting Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).   The ALJ, with respect to the new medical information submitted, appears to have substituted his own lay diagnosis with respect to the severity of plaintiff's mental health.   He discredited the second medical statement of Dr. Lutka, which was supported by the objective diagnostic testing results of Dr. Groves, as well as plaintiff's consistent subjective self-reported limitations, without enough explanation, and he even relied on mistaken information.   Because the court is also not a medical source and cannot evaluate the medical evidence submitted after the first hearing, this case must be remanded for proceedings consistent with the opinion and the ALJ should consider whether the record needs to be further developed by requesting updated state agency mental health reviews to

17

consider the voluminous treatment records and medical source reports submitted after the first hearing.

### 2. Failure to Accept Plaintiff's Self-described Conditions

"[The administrative law judge] must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence." Id.; see Mason, 994 F.2d at 1067–68.   Here, the ALJ found plaintiff's major depressive disorder, generalized anxiety disorder and post-traumatic distress disorder to be severe medical impairments in step two.[9]  (R. at 24-25, 1586.)   The severity of those impairments' impact on level of functioning on a sustained basis, was considered across the totality of plaintiff's medical record.   Plaintiff, however, maintains that if Dr. Lutka's opinion was accepted, then her testimony at the hearings would have been "consistent with the 'record as a whole'" and should have been accepted by the ALJ for consideration in evaluation of the "total limiting effects" of her impairments. (Pl.'s Br. ECF No. 8 at 4.)

The ALJ copied and pasted many paragraphs from the first Notice of Decision – Unfavorable, dated December 13, 2021, wholescale, without change, into the second Notice of Decision – Unfavorable, dated April 12, 2024. (R. at 32-33, 1594-1596.)   Some of this information was incorrect in the second decision, (R. at 1595) at least according to plaintiff's testimony on the record at the November 30, 2023 hearing, with respect to homeschooling her son, (R. at 1612-1613), caring for her son with autism, (R. at 1626), and gardening. (R. at 1628.)

---

9. Plaintiff's other physical conditions were also considered, but are not relevant to the issues raised on appeal, and will not be discussed.

Had plaintiff's treating psychiatrist's opinion been found persuasive, or even partially persuasive, by the ALJ then her testimony may have been found been consistent, which is indicative of credibility. See Niewierski, 737 F. Supp. 2d at 472 ("Since plaintiff's limitations arising from [her] mental limitations were not carried through the remainder of the sequential analysis, remand is required for the ALJ to reconsider if those limitations singly and in combination with [her] other severe impairments prevent plaintiff from performing gainful employment."). On remand, if the ALJ finds the treating physician's opinion to be wholly or partially consistent and persuasive, the ALJ should also review plaintiff's testimony in that light.

      C.     **Request for a Different Administrative Law Judge**

Remand for further consideration is required in this case. "The United States Court of Appeals for the Third Circuit has stated that remand to a different administrative law judge ALJ is appropriate where bias against the claimant has been proved." Id. (citing Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995) (citing Hummel v. Heckler, 736 F.2d 91 (3d Cir.1984)). While it is difficult to assess whether the ALJ was biased against plaintiff, after two bites of this apple, it would be appropriate for a fresh set of eyes to evaluate plaintiff's treatment records and Dr. Lutka's and Dr. Groves' evidence for consistency and supportability. The court urges the Commissioner to assign the remand to a different administrative law judge.

**VI.    CONCLUSION**

This case will be remanded to the Commissioner for further proceedings consistent with this opinion. Having reviewed the parties' motions and briefs, the record as a whole and the applicable law, the court finds the ALJ's decision did not adequately explain how he considered

the mental health evidence submitted after the first hearing for consistency and supportability. The court will deny plaintiff's motion for summary judgment (ECF No. 7) and defendant's cross-motion for summary judgment. (ECF No. 10).

    An appropriate order follows.


Dated: August 14, 2025                                BY THE COURT:

                                                                    /s/ JOY FLOWERS CONTI
                                                                    Joy Flowers Conti
                                                                    Senior United States District Judge